IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

ATLANTIC SPECIALTY INSURANCE
COMPANY,

                Plaintiff,                    OPINION AND ORDER

                                                        16-cv-282-wmc

RICHARD LAND,

                Involuntary Plaintiff,
   v.

UNITED STATES OF AMERICA,

                Defendant.
_____

Plaintiff Atlantic Specialty Insurance Company and involuntary plaintiff Richard Land seek damages from the United States of America for personal injuries arising under the Federal Tort Claims Act, 28 U.S.C.A. §§ 2671 *et. seq*. Before the court is defendant's motion to dismiss any claims under the Wis. Stat. § 101.11, Wisconsin's Safe Place Statute, on the basis that the statute does not apply as a matter of law. (Dkt. #5.) For the reasons that follow, the court will grant that motion.

ALLEGATIONS OF FACT

On March 14, 2014, Richard Land, an independent contractor for Dunham Express Corporation, travelled under dispatch to the Middleton United States Post Office in Middleton, Wisconsin. While exiting his vehicle in the Post Office parking lot,

Land slipped and fell, allegedly due accumulated ice in a hole that had formed in the parking lot pavement.

As a result of his fall, Land suffered serious bodily injury. Plaintiff Atlantic Specialty Insurance Company was the occupational accident insurance carrier for the Dunham Express Corporation at the time of the incident, and it reimbursed Land for certain of his losses.

OPINION

Wisconsin's Safe Place Statute requires every employer and every owner of a public building to furnish a place that is safe for employees and frequent visitors. In particular, the employer or owner of a public building "shall so construct, repair or maintain such place of employment or public building as to render the same safe." Wis. Stat. § 101.11. This statutory duty carries a higher standard of care than that imposed by ordinary negligence. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 9, 274 Wis. 2d 162, 682 N.W.2d 857. The statute's applicability here turns on whether the parking lot area of the Post Office building qualifies as either a "place of employment" under Wis. Stat. § 101.01(11) or a "public building" under Wis. Stat. § 101.01(12). Because the court finds that a U.S. Post Office parking lot is expressly exempted from the legal definitions of a place of employment or a public building under the Safe Place Statute, defendant's motion to dismiss will be granted.[1]

---

[1] Because of this holding, the court need not address the government's other ground for dismissal, that the icy hazard was a "temporary condition."

I.      **Place of employment**

The Safe Place Statute provides that a "place of employment":

> includes every place, whether indoors or out or underground and the premises appurtenant thereto where either temporarily or permanently any industry, trade, or business is carried on, or where any process or operation, directly or indirectly related to any industry, trade, or business, is carried on, and where any person is, directly or indirectly, employed by another *for direct or indirect gain or profit*.

Wis. Stat. § 101.01(11) (emphasis added).

Wisconsin has generally followed a bright-line rule that exempted buildings operated by municipalities or non-profit organizations for lack of a profit-generating motive, including post offices. *See, e.g., Ruppa v. Am. States Ins. Co.*, 91 Wis. 2d 628, 639, 284 N.W.2d 318 (1979) (finding that the Dane County Arena was not a place of employment because "[i]nstitutions operated by nonprofit or governmental organizations are not places of employment"); *Burroughs v. United States*, No. 04 C 968, 2005 WL 1793590, at *1 (E.D. Wis. July 27, 2005) ("Because the Kenosha Post Office is an institution operated by a governmental organization, pursuant to *Ruppa*, it is not a place of employment."). Plaintiffs correctly point out, however, that there is no categorical exemption for government or non-profit institutions. Accordingly, "courts should conduct an individualized inquiry to determine whether the intent of a particular organization is to make a profit." *Flodin v. United States*, No. 13-CV-853-BBC, 2015 WL 3651806, at *2 (W.D. Wis. June 11, 2015).

Still, this inquiry is easily resolved with regard to the Post Office, as "Congress has made the determination as a matter of law that the Postal Service is a governmental organization that is not operated for profit." *Ribarich v. United States*, No. 14-CV-735-

BBC, 2015 WL 1321661, at *5 (W.D. Wis. Mar. 24, 2015) ("The law requires the Postal Service to deposit revenues in a fund used to carry out the duties of the Postal Service . . . [and] limits the Postal Service's discretion in setting rates. . . . [T]he statutory purpose of the Postal Service is to provide a public service, not to make money."). Indeed, when Congress established the Postal Service in The Postal Reorganization Act, it mandated that the Post Office prioritize service over costs.  39 U.S.C. § 101.[2]

Despite this seemingly dispositive law, plaintiff maintains that determination of a U.S. Post Office's non-profit status is premature at the pleading stage, citing *Leitner v. Milwaukee Cty.*, 94 Wis. 2d 186, 287 N.W.2d 803 (1980).  (Pls.' Opp'n (dkt. #7) 2-3.) Specifically, plaintiff relies on the Wisconsin Supreme Court's holding in *Leitner* that "[t]he determination of whether the profit motive is present or absent cannot be made at the motion to dismiss or demurrer stage, especially when the complaint specifically alleges the premises were in [a] place of employment."  94 Wis. 2d at 191.  Unlike here, however, the primary issue in *Leitner* was whether to analyze the profit motive of the property owner (a municipality) or an independent contractor employed at the premises. *Id*. at 190.  No such distinction applies to the present case -- since the U.S. Postal Service is both owner and employer here, and further inquiry regarding the profit motive would be "a pointless exercise."  *Ribarich*, 2015 WL 1321661, at *5.

---

[2] Contrary to plaintiff's argument, Richard Land's arguable employment by an unrelated third party at the time he used the parking lot has no bearing on the Post Office's profit motive. *Voeltzke v. Kenosha Mem'l Hosp., Inc.*, 45 Wis. 2d 271, 280, 172 N.W.2d 673 (1969) ("The fact that the employees of other employers, such as the salesmen described in the offer of proof, use the parking lot does not make the hospital an owner of a place of employment.").  Even if it did, of course, there would still be the problem that Land is apparently an independent contractor, albeit one covered by Dunham's occupational insurance.

4

## II. Public building

Though there is no dispute that the Post Office building itself is a "public building" under the Safe Place Statute, defendant contends that the parking lot where Land was injured does not fall under this definition. A "public building"

> means *any structure*, including exterior parts of such building, such as a porch, exterior platform, or steps providing means of ingress or egress, used in whole or in part as a place of resort, assemblage, lodging, trade, traffic, occupancy, or use by the public or by 3 or more tenants.

Wis. Stat. § 101.01(12) (emphasis added).

Plaintiffs argue that the parking lot constitutes a "structure" within the meaning of the statute because it is held out for public use and there is "traffic," but the definition of "structure" is consistently construed narrowly. For example, many features that more closely conform to the text -- such as steps that are not "integral" -- have failed to meet the definition. *See, e.g.*, *Meyers v. St. Bernard's Congregation*, 268 Wis. 285, 290, 67 N.W.2d 302 (1954) (a large concrete platform and two accompanying sets of concrete stairs were merely an "approach" to the structure); *Lawver v. Joint Dist. No. 1, Mount Horeb & Blue Mounds*, 232 Wis. 608, 288 N.W. 192 (1939) ("Clearly the school grounds and the sidewalk area can not be considered a public building by any stretch of the imagination."); *Moore v. City of Milwaukee*, 267 Wis. 166, 170, 65 N.W.2d 3 (1954) (holding that a platform erected to access a polling booth was technically a structure, but not one within the meaning of the statute). Even more persuasive, the Wisconsin Supreme Court has specifically held, albeit in dicta, that a parking lot does *not* fall within the definition of a public building. *See Voeltzke v. Kenosha Mem'l Hosp., Inc.*, 45 Wis. 2d

5

271, 276, 172 N.W.2d 673, 675-76 (1969) ("The plaintiffs do not contend that the parking lot falls within the definition of a public building or structure nor, in our opinion, could they successfully do so.").

In response, plaintiffs cite to cases that ultimately do not support their claims contrary contention. First, while the court in *Bauhs v. St. James Congregation,* 255 Wis. 108, 37 N.W.2d 842 (1949), held that the duty imposed by the Safe Place Statute extends to "such portions as are used or held out to be used by the public," the sentence immediately preceding the language quoted by plaintiff flatly declares, "[i]t is clear that a sidewalk is not a structure." *Id.* at 110, 37 N.W.2d at 844. Similarly, plaintiff offers *Wittka v. Hartnell*, 46 Wis. 2d 374, 175 N.W.2d 248 (1970), to illustrate that a parking lot can fall under the Safe Place Statute, but that case relied on the "appurtenant to" language in the "places of employment" definition, a phrase tellingly *absent* from the definition for public buildings. Finally, plaintiff cites *Gupton v. City of Wauwatosa,* 9 Wis. 2d 217, 102 N.W.2d 401 (1960), suggesting that the primary consideration in finding a public building is whether the public has access. Actually, *Gupton* concerned whether a *portion* of a building to which the public had no access can be severed from the rest of a public building for purposes of the Safe Place Statute. *Id*. at 224, 102 N.W.2d at 403. Plaintiff's attempt to reverse that logic -- that public access *creates* a public building -- lacks any arguable merit, especially in light of the general consensus that any definition of a structure should be construed narrowly as already cited above.

ORDER

IT IS ORDERED that defendant United States of America's motion to dismiss count II of the complaint (dkt. #5) is GRANTED.

Entered this 17th day of April, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge