IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
--------------------------------------------------------------------

ATLANTIC SPECIALTY INSURANCE
COMPANY,

                      Plaintiff,                              OPINION AND ORDER

RICHARD LAND,                                            16-cv-282-wmc

                      Involuntary Plaintiff,

      v.

UNITED STATES OF AMERICA,

                      Defendant.
--------------------------------------------------------------------

While making a delivery for his employer Dunham Express, involuntary plaintiff Richard Land allegedly fell on ice in the Middleton Post Office parking lot, injuring his neck, back, shoulder and wrists. Dunham's occupational accident insurance carrier, plaintiff Atlantic Specialty Insurance Company, now seeks money damages from the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80. Specifically, Atlantic alleges that the United States was negligent in failing to both divert water from the parking lot and to treat the ice with salt or sand.[1] Before the court is the United States' motion for summary judgment. (Dkt. #32.)[2] For the reasons that follow, the court concludes that Atlantic has failed to put forth sufficient evidence from which a

---

[1] Atlantic also alleged a claim for violation of Wisconsin's Safe Place Statute, Wis. Stat. § 101.11, which the court previously dismissed, finding that the post office parking lot was not a public place for purposes of that statute. (4/17/17 Op. & Order (dkt. #25).)

[2] Only Atlantic Specialty responded to defendant's motion for summary judgment, but involuntary plaintiff Land filed a motion to join Atlantic Specialty's brief in opposition to defendant's motion for summary judgment (dkt. #57), which the court will grant.

reasonable fact finder could find that defendant breached a duty of care. Accordingly, the court will grant defendant's motion for summary judgment.

UNDISPUTED FACTS[3]

## A. Middleton Post Office

The United States Post Office in Middleton, Wisconsin, is located at 7613 Elmwood Avenue. The customer entrance and parking lot are on the north side of the building. On the west side of the building, there is a loading dock area and parking area for employees and delivery trucks. The loading dock area has a concrete pad that has parking stalls for two trucks to unload side by side.

There are two catch basins in the west parking lot, one north of the concrete parking pad and the other to the south.[4] The photograph below shows the catch basin to the right (or south) of Land's truck as it faced the loading dock, the morning of the accident:

---

[3] Unless otherwise noted, the court finds the following facts to be material and undisputed when viewed in the light most favorable to the non-moving parties.

[4] Plaintiff disputes this fact, and others, on the basis that Land did not provide testimony to support, at least, all aspects of the proposed fact. (*See, e.g.*, Pl.'s Resp. to Def.'s PFOFs (dkt. #47) ¶ 7.) Still, there is no dispute that Statz's declaration -- the other evidence cited for support -- provides the necessary support for the proposed finding, and plaintiff has provided no basis to dispute Statz's representations as to the layout of the post office.



(Land Depo., Ex. 9 (dkt. #35-5).)  There is a small pitched roof over the loading dock area with a gutter that drains into a downspout on the north side of the loading dock (barely visible in the picture) and into the catch basin north of the loading dock (not visible).  The roof on the remainder of the Middleton Post Office is flat.

Roberta Statz was the acting manager at the Middleton Post Office on March 14. She typically arrived between 6:00 and 6:30 a.m., which she believes was her arrival time that morning, although she was not certain of that by the time of her deposition. Regardless, there is no dispute that she arrived before Land and was at the Post Office at the time of his fall.

Statz parked in the south stall of the concrete parking pad. She then walked around the back of her van and up the ramp leading into the loading dock area to enter the building. This path is well traveled, with approximately 30 people entering the Middleton Post Office through the loading dock each day. Statz did not observe any ice or experience any slippery conditions in the parking lot that morning, even in the area where Land reported falling. Statz avers in her declaration that if she had observed ice or experienced slippery conditions, she would have arranged for salt or sand to be applied, or she would have done so herself. Statz further avers that she did not believe that there would be ice present or forming given the temperature that day.

B. **Land's Accident**

On March 14, plaintiff Richard Land drove a Dunham Express step van[5] to the Middleton Post Office to deliver two boxes of toner cartridge. Land arrived between 8:30 and 9:00 a.m., and parked his truck in the southern parking stall of the concrete pad in the loading dock area, immediately behind Statz's van. In the complaint, Atlantic Specialty and Land allege that he exited his truck and "stepped into a large hole filled with ice and water." (Pl.'s Compl. (dkt. #1) ¶ 11; Invol. Pl.'s Compl. (dkt. #3) ¶ 1.) At his deposition, however, Land conceded that this description was not accurate. Instead, Land claims that he stepped out of his truck on the passenger side, took several steps, and then slipped on ice underneath water. While acknowledging that he saw the water

---

[5] "Multi-step trucks (also known as walk-in delivery or step vans) are a type of light-duty and medium-duty truck created for local deliveries to residences and businesses. They are designed to be driven either sitting down or standing up, and often provide easy access between the driver and goods, hence the name 'Walk-In Delivery' van." "Multi-stop truck," *Wikipedia*, https://en.wikipedia.org/wiki/Multi-stop_truck.

4

before stepping down, Land testified that he did not know there was ice underneath it. Land further testified, consistent with Statz, that before falling, he did not see any ice in the area where he fell. At his deposition, Land also testified that he did not expect ice "because things were melting." (Land Depo. (dkt. #35) 67.)

At approximately 9:30, Land reported to an employee that he had slipped and fallen, hurting his neck, back, left shoulder and wrists. Land was then directed to Statz, who took notes and photographs to create a report.

On the passenger side of Land's truck and Statz's van, there was water draining from an area of residual snow adjacent to the building (not visible in the picture) into the catch basin south of the loading dock area (as shown in the picture). Plaintiff Atlantic contends that both water and ice were present, not simply water and that the photos speak for themselves as to whether they depict ice and/or water. (Pl.'s Resp. to Def.'s PFOFs (dkt. #47) ¶¶ 23-24.) In contract, Statz avers that the water was not deep enough to measure, and the pavement was clearly visible through it, which defendant contends undermines any inference that the pavement was obscured by ice.

For his part, Land testified that he never saw ice in the area where he fell and, when asked to review the photographs taken immediately after his fall, he could not identify any visible ice in the area. (Def.'s Reply to Def.'s PFOFs (dkt. #55) ¶ 24 (citing Land Depo. (dkt. #35) pp.79-81).) Still, Land maintained that there was a three to five foot patch of ice under the water, next to his van.

## C. Climatological Data[6]

On March 14, 2014, the temperature at the Dane County Regional Airport in Madison, Wisconsin, was 43 degrees at 9:00 a.m. and 49 degrees at noon. The temperature had been 36 degrees or above and increasing since 3:00 p.m. the previous day, March 13. As plaintiff points out, however, that before those warmer temperatures, it had been below freezing, though not for the 63 consecutive hours plaintiff claims. (Def.'s Resp. to Pl.'s Add'l PFOFs (dkt. #56) ¶ 56 (explaining that the data only shows freezing temperatures from 3:00 a.m. on March 12 to noon on March 13).)[7] There was no precipitation on March 13 or earlier on March 14, nor was it raining when Land fell.

OPINION

Liability under the Federal Torts Claim Act, 28 U.S.C. §§ 2671-80, is determined by reference to state law. *Molzof v. United States*, 502 U.S. 301, 305 (1992). In Wisconsin, a claim for common law negligence has four elements: (1) a duty of care owed by the defendant; (2) a breach of that duty; (3) a causal connection between the breach and plaintiff's injury; and (4) an actual loss or damage as a result of the injury. *Smaxwell v. Bayard*, 2004 WI 101, ¶ 32, 274 Wis. 2d 278, 682 N.W.2d 923. For the purposes of summary judgment, the government neither disputes that Land was injured

---

[6] Under Federal Rule of Evidence 201(b), defendant requests that the court take judicial notice of the local climatological data from the National Oceanic and Atmospheric Association for Madison, Wisconsin, for March 2014. (Def.'s Mot. for Judicial Notice (dkt. #37).) The data was collected from the Dane County Regional Airport, located 9 miles from the Middleton Airport. (*Id.* at ¶¶ 1-.2) Plaintiff does not object to this motion. Indeed, plaintiff also purports to rely on that same data to oppose summary judgment. As such, the motion will be granted, and the court has considered this evidence in deciding the motion for summary judgment.

[7] Defendant further points out that for the forty-eight hour period before 3:00 a.m. on March 12, temperatures were above freezing. (Def.'s Resp. to Pl.'s Add'l PFOFs (dkt. #56) ¶ 29.)

when he slipped and fell, nor that he suffered an actual loss or damages because of that injury. Instead, defendant's motion is focused on the scope of the duty of care and whether defendant breached that duty.

Whether a duty of care exists and the scope of that duty is a question of law. *Brennder v. Amerisure Mut. Ins. Co.*, 2017 WI 38, ¶ 12, 374 Wis. 2d 578, 893 N.W.2d 193. "[A]ll persons have a duty of reasonable care to refrain from those acts that unreasonably threaten the safety of others." *Antwaun A. ex rel. Muwonge v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 55, 596 N.W.2d 456, 461 (1999) (citing *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 77 N.W.2d 397 (1956)). "This duty arises 'when it can be said that it was foreseeable that his act or omission to act may cause harm to someone.'" *Antwaun A.*, 228 Wis. 2d at 55, 596 N.W.2d at 461 (quoting *A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483–84, 214 N.W.2d 764 (1974)). As such, "the existence of a duty hinges on foreseeability." *Antwaun A.*, 228 Wis. 2d at 56.

Whether a duty of care has been breached also turns on the reasonableness of one's actions and the foreseeability of injury under the circumstances. One breaches the duty of ordinary care if he or she, "without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury." *Alvarado v. Sersch*, 2003 WI 55, ¶ 14, 272 Wis. 2d 74, 662 N.W.2d 350 (citing Wis. JI-CIVIL 1005). While actual or even constructive notice of the risk is not necessary to demonstrate negligence, *see Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶ 25, 274 Wis.2d 162, 682 N.W.2d 857, the risk still must be foreseeable to establish a breach of the ordinary duty of care, *see Behrendt v.*

7

*Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 23, 318 Wis. 2d 622, 768 N.W.2d 568.

Plaintiff rightly points out that summary judgment is rarely appropriate in resolving negligence claim. (Pl.'s Opp'n (dkt. #48) 3 (citing *Wagner v. Dissing*, 141 Wis. 2d 931, 946, 416 N.W.2d 655 (Ct. App. 1986).) As the Wisconsin Supreme Court explained in *Behrendt v. Gulf Underwriters Ins. Co.*, however, "where there is no genuine issue of material fact as to the breach and where there is a lack of foreseeable risk, it can be said as a matter of law that, based on the facts presented, there is no breach because no properly instructed, reasonable jury could find the defendant failed to exercise ordinary care." 2009 WI 71, at ¶ 23 (internal citation and quotation marks omitted).

Plaintiff posits two core theories in support of her negligence claim: (1) the parking lot (more specifically, the water drainage system) was defectively designed, resulting in water and ice buildup; and (2) defendant failed to treat the ice with salt or sand.[8] The court will address each theory in turn.

I. **Drainage System**

With respect to the first theory -- that a defect in the parking lot caused the ice buildup -- the court agrees with defendant that on the facts of record, this claim required expert testimony, even if viewed in the light most favorable to plaintiff. Since plaintiff offers *no* such expert, this claim fails as a matter of law.

---

[8] In its opposition brief, plaintiff describes four theories, citing to the complaint for support. The first three -- failure to inspect and maintain; failure to warn; failure to repair, remove, eliminate, remedy, clear or correct -- all concern the parking lot design, and specifically the design of the water drainage system, or at least plaintiff fails to articulate another basis for these broad, vague claims. The fourth theory addresses the failure to perform ice services. (Pl.'s Opp'n (dkt. #48) 9.)

Except for some obvious abnormality not alleged or argued by plaintiff, any negligence claim premised on a defect in the *design* of the Middleton Post Office's parking lot would fall outside common knowledge. As described above, there were two catch basins in the area close to where Land slipped and fell. Certainly, expert testimony would be required to assess the proper placement of catch basins in reference to existing buildings and parking lot, as well as the grade and slope of the parking lot, likely impact of sun and shadows, and the accumulation of snow, water and ice, among other considerations. *See Lees v. Carthage Coll.*, 714 F.3d 516, 522 (7th Cir. 2003 ("Where all the specifics of a defendant's duty of care involve specialized knowledge, plaintiffs must introduce expert testimony to establish this element of a negligence claim."); *Payne v. Milwaukee Sanitarium Found., Inc.*, 81 Wis. 2d 264, 276, 260 N.W.2d 386, 392 (1977) ("Expert testimony should be adduced concerning those matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study or experience.").

If the evidence demonstrated a failure on the part of defendant to address these factors in any way, then the defect and the risks associated with water build-up and ice formation might be obvious and foreseeable to a lay person. Here, however, defendant devised a solution involving catch basins, a gutter system and a slanted section of the roof. As the trier of fact in FTCA claims, this court would have no basis for determining without expert testimony that the Middleton Post Office's loading dock and lot design was defective, causing a reasonably foreseeable risk of injury. *See, e.g., Holschbach v.*

9

*Washington Park Manor*, 2005 WI App 55, ¶ 14, 280 Wis. 2d 264, 694 N.W.2d 492 (affirming grant of summary judgment to defendant in slip and fall accident where "the record does not lead us to conclude the downspout was built other than in the ordinary and usual way as an ordinary and usual addition to a building"); *Oxman v. One Beacon Ins. Co.*, 2005 WI App 233, ¶ 12, 287 Wis. 2d 828, 705 N.W.2d 905 (unpublished) (affirming entry of summary judgment in defendant's favor on common law negligence claims where plaintiff failed to offer expert testimony to determine whether placement of rug in a public doorway violated duty of ordinary care).

If anything, the evidence is to the contrary, since the overhanging dock gutter is designed to flow north away from the area of plaintiff's fall into the north drainage basin. Indeed, the only evidence of the source of water draining to the south basin is a very small, residual pile of snow to the south of the dock and another, barely visible pile even further south. In short, the *only* evidence is of ordinary drainage having nothing to do with the loading dock, much less with its design.[9] (Land Depo. (dkt. #35) 71-73, Ex. 11.)

## II. Treating Ice Build-Up

This leaves plaintiff's second contention that defendant breached a common law duty of ordinary care by failing to treat the ice with salt or sand. While, premises are merely required to be "reasonably safe" under the common law, *Gould v. Allstar Ins. Co.*,

---

[9] If anything, a question might be asked as to why the acting manager regularly parked in one of the two docking spots, preventing trucks from stopping closer to the protective and apparently drier overhang area, but there is no claim of negligence in this record.

59 Wis. 2d 355, 361, 208 N.W.2d 388, 391 (1973), defendant argues it is entitled to summary judgment under case law applying the higher standard of care of the Wisconsin's Safe Place Act. *See Megal*, 2004 WI 98, at ¶ 23 ("The standard of care that the safe-place statute establishes is a higher standard of care than that which the law imposes through common-law negligence."). Even under this higher standard, property owners are not required to ensure their premises are completely free of all defects and hazards. *See, e.g., Zernia v. Capitol Court Corp.*, 21 Wis. 2d 164, 169, 124 N.W.2d 86, 89 (1963) (affirming entry of summary judgment in defendants' favor on Safe Place Act claim involving slip and fall in parking lot, explaining "defendant's duty did not extend to making the parking lot absolutely safe").

The question for summary judgment then is whether the undisputed record would support a finding that the risk of injury from ice formation was reasonably foreseeable, thus requiring treatment of the ice with sand and salt. On this question, plaintiff's evidence is sorely lacking. Plaintiff has offered *no* evidence that anyone was aware of ice forming in the area around Land's fall. On the contrary, the *only* evidence is that acting manager Statz walked by that area on her way into the Post Office sometime before Land's arrival, and she avers seeing no ice. While somewhat self-serving and speculative, Statz also avers without contradiction that she would have asked someone to salt or sand it or done so herself had she seen ice that morning. No other employee or frequenter that morning mentioned any ice. Finally, Land, himself, testified that he saw no ice before falling.

In response, plaintiff contends that the "photographs speak for themselves," but

11

the photographs are inconclusive at best and seem to show only water in the area where Land allegedly fell at worst. Accordingly, there would appear no evidence that anyone at the Post Office had notice (actual or otherwise) that the wetness was ice, much less that there was ice under the water.

Of course, plaintiff need not show actual (or even constructive) knowledge of ice. Still, there must be *some* basis for finding that the risk of ice formation was foreseeable. Even the climatological data undermines such a finding, or at least plaintiff has failed to explain otherwise. At the time of Land's fall, the temperatures were above freezing and continuing to rise. While this warm-up may not have been sufficient to entirely melt the snow ground cover -- a point plaintiff harps on -- the only evidence of snow or ice are the relatively residual spots that stubbornly remain in shade long after it has melted everywhere else. Plaintiff offers no basis for explaining, through expert testimony or otherwise, why one would foresee ice still remaining under water run-off when the temperature at the time of Land's fall was 43 degrees and had been above freezing for the prior 6 hours.

Of course, this is certainly *possible*, and indeed for purposes of summary judgment, the court finds it happened just so based on Land's testimony to that effect, but *no* evidence suggests that it was reasonably foreseeable that ice was lingering beneath the water meandering to the south basin at the time of Land's slip and fall, or that this was so in the hours or days leading up to that accident. As such, any negligence theory based on defendant's failure to treat that ice with sand or salt fails as a matter of law.

ORDER

IT IS ORDERED that:

1) Defendant the United States of America's motion for summary judgment (dkt. #32) is GRANTED.

2) Defendant's motion for court to take judicial notice of climatological data and google maps calculations (dkt. #37) is GRANTED.

3) Involuntary plaintiff Richard Land's motion to join Atlantic Specialty's opposition (dkt. #52) is GRANTED.

4) The clerk of court is directed to enter judgment in defendant's favor and close this case.

Entered this 30th day of August, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge